FILED

1  MICHAEL J. ASCHENBRENER (277114)        2012 AUG 17  PM 2: 21
   mja@aschenbrenerlaw.com
2  ASCHENBRENER LAW, P.C.                  CLERK U.S. DISTRICT COURT
   795 Folsom St, First Floor              CENTRAL DIST. OF CALIF.
3  San Francisco, CA 94107                 LOS ANGELES
   Telephone: (415) 813-6245               BY
4  Facsimile: (415) 813-6246

5  ATTORNEYS FOR PLAINTIFF

6              UNITED STATES DISTRICT COURT

7           CENTRAL DISTRICT OF CALIFORNIA

8                          CV12-7116-SVW (MRWx)

9  HEATHER TINDELL, an individual,      ) Case No.
                                        )
10             Plaintiff,               ) COMPLAINT FOR:
                                        )
11  v.                                  ) 1. Stored Communications Act, 18
                                        )    U.S.C. § 2701;
12  GARY MOTYKIE, M.D., INC. a California ) 2. Invasion of Privacy;
13  Medical Corporation, also d/b/a as Motykie ) 3. Public Disclosure of Private
    Med Spa; GARY MOTYKIE, an individual; )    Facts;
14  and KEVIN MOTYKIE, an individual,    ) 4. Intentional Infliction of
                                        )    Emotional Distress;
15             Defendants.              ) 5. Sexual Harassment, Cal. Gov't.
                                        )    Code § 12940;
16                                      ) 6. Retaliation;
17                                      ) 7. Wrongful Termination in
                                        )    Violation of Public Policy.
18                                      )
19                                      ) DEMAND FOR JURY TRIAL
20
21
22
23
24
25
26
27
28

COMPLAINT

1    Plaintiff, by her attorneys, upon personal knowledge as to herself and her own acts

2  and upon information and belief as to all other matters, alleges as follows:

3                          **NATURE OF THE ACTION**

4    1.    Plaintiff Heather Tindell ("Plaintiff" or "Ms. Tindell") brings this complaint

5  against Defendants Gary Motykie, M.D., Inc. (the "Practice"), Dr. Gary Motykie, an

6  individual ("Dr. Motykie"), and Kevin Motykie, an individual (collectively, "Defendants")

7  for Defendants' practice of invading Plaintiff's privacy, sexually harassing her, and

8  wrongfully terminating her.

9                                **PARTIES**

10    2.    Plaintiff Heather Tindell resides in Woodland Hills, California and is a citizen

11  of California.

12    3.    Defendant Gary Motykie, M.D., Inc. is a cosmetic surgery practice

13  (www.drmotykie.com) and medical spa (www.motykiemedspa.com) and a citizen of

14  California. It is located at 9201 Sunset Blvd., Suite GF-1, Los Angeles, California 90069.

15    4.    Defendant Dr. Gary Motykie resides in Los Angeles, California and is citizen

16  of California. He is the owner of and cosmetic surgeon at Gary Motykie, M.D., Inc.

17    5.    Defendant Kevin Motykie resides in the State of Illinois. He is spa director at

18  Defendant Gary Motykie, M.D., Inc. Upon information and belief, he is also a part owner of

19  the medical spa.

20                          **JURISDICTION AND VENUE**

21    6.    This Court has jurisdiction over the subject matter of this action pursuant to

22  28 U.S.C. § 1331.

23    7.    Personal Jurisdiction and venue are proper because the Practice is a

24  corporation headquartered in Los Angeles County, and/or because the improper conduct

25  alleged herein by all defendants occurred in, was directed from, and/or emanated or exported

26  from California.

27

28

COMPLAINT

## FACTS RELATING TO DEFENDANTS

8.      Dr. Motykie owns and operates a high profile cosmetic surgery practice on Sunset Boulevard in West Hollywood. The Practice consists of an office-based practice, a surgery center, and a medical spa. Kevin Motykie is the spa director at the medical spa component of the Practice. Kevin Motykie also claimed to be 50% owner of the medical spa, even though he is not a licensed physician.

9.      Dr. Motykie and Kevin Motykie both maintained supervisory roles over Plaintiff at all times relevant to this Complaint.

10.     The Practice advertises that Dr. Motykie appears frequently on television programs, including "Dr. 90210," "Dr. Phil," "Discovery Health," "Inside Edition," "Access Hollywood" and many other programs. This is to say nothing of Dr. Motykie's many appearances in print publications, as well.

## FACTS RELATING TO PLAINTIFF

11.     On August 25, 2010, the Practice made a written offer of employment to Plaintiff for the position of Surgical Consultant for annual compensation of $75,000 plus bonus. By separate agreement, Plaintiff's salary was to increase to $85,000 after 90 days of employment with performance-based quarterly bonuses of at least $2,500.

12.     Plaintiff also discussed with Dr. Motykie and/or Kevin Motykie that she expected total annual compensation of approximately $175,000. Kevin Motykie explicitly represented to Plaintiff that she could easily earn $175,000 to $200,000 annually through the inclusion of bonuses and commissions.

13.     In August 2010, Plaintiff began work for the Practice as Surgical Consultant with an annual salary of $75,000. Plaintiff accepted this offer because of Defendants' explicit statement that she could earn $175,000 to $200,000 annually.

14.     In September 2010, Plaintiff also took over the role of Manager of Practice, Surgical Facility, in addition to her duties as Surgical Consultant. Plaintiff's pay did not increase at this time.

COMPLAINT

15.     Plaintiff reported to both Dr. Motykie and Kevin Motykie.

16.     In December 2010, Plaintiff received her only quarterly bonus of $2,500. Plaintiff continued to perform at any even higher level in the months that followed this bonus, but she never received another bonus. Instead, she was told that she would get the missing bonuses eventually, but she never did.

17.     In January 2011, Plaintiff's salary was increased to $85,000 annually.

18.     Plaintiff was promoted to Spa Director in early 2011.

19.     On November 1, 2011, the Practice terminated Plaintiff's employment. Plaintiff's salary at the time she was terminated was $85,000 annually.

20.     Plaintiff never received any commissions. Plaintiff earned significant commissions that were never paid during her time of employment at the Practice.

21.     On November 2, 2011, on information and belief, the Practice hired two people to replace Ms. Tindell, Kathryn Holtz and Jessica.

## FACTS RELATING TO DEFENDANTS' MISCONDUCT

### *Sexual Harassment & Hostile Work Environment*

22.     Throughout Ms. Tindell's employment at the Practice, she suffered continuous and on-going sexual harassment by Dr. Motykie and Kevin Motykie. Plaintiff also endured a hostile work environment throughout her employment due to the conduct detailed below.

23.     Kevin Motykie asked Ms. Tindell if she had ever posed nude. Ms. Tindell responded that she was a former lingerie model, but preferred not to discuss the matter with Kevin or anyone else in her workplace. Kevin Motykie replied that he had seen "some of her stuff" and that she had a "nice ass." She inquired as to how he could have seen such things and responded that he "had his sources."

24.     Dr. Motykie frequently inquired as to details concerning her divorce. Because Dr. Motykie knew private details of the matter that had only been communicated to her ex-husband via email, Plaintiff suspected that Dr. Motykie had gained unauthorized access to

1  her personal email account. Plaintiff asked Dr. Motykie how he could know such details and

2  he responded that "he just knew."

3      25.    While in the workplace, Dr. Motykie frequently grabbed and touched Ms.

4  Tindell without her consent and against her wishes.

5      26.    While in the workplace, Dr. Motykie frequently commented on whether he

6  was Plaintiff's "type," and would then belittle her spouse and later anyone with whom he

7  suspected she was romantically involved.

8      27.    While in the workplace, Dr. Motykie frequently commented to Ms. Tindell

9  that she was sexy and asked her whether she had ever posed nude.

10     28.    While in the workplace, Dr. Motykie frequently asked about and commented

11 on Ms. Tindell's personal life, specifically whether she was romantically involved with

12 anyone, despite her telling Dr. Motykie that she did not wish to discuss personal matters with

13 him.

14     29.    Dr. Motykie repeatedly discussed with Plaintiff the alleged sexual escapades

15 and drug use of persons Plaintiff knew. These conversations typically closely followed

16 Plaintiff having communicated privately with the subject persons via her personal cell phone.

17 The conversations were not welcome and caused Plaintiff great emotional distress because it

18 made her think her employers had access to her private communications with others.

19     30.    While on a work trip, Dr. Motykie graphically described the alleged sexual

20 escapades of a person Plaintiff knew. Dr. Motykie also interrogated Plaintiff as to her

21 relationship with said person, including whether she had "screwed" him. This conversation

22 immediately followed Plaintiff communicating privately with said person via her personal

23 cell phone. The conversation was not welcome and caused Plaintiff great emotional distress

24 because it made her think her employers had access to her private communications with

25 others.

26     31.    On the same work trip, Dr. Motykie invited Plaintiff to his hotel room in the

27 evening. Plaintiff declined the invitation. Immediately thereafter, Dr. Motykie told Plaintiff

28

COMPLAINT

1  that she "should be walking on egg shells," that her job was in jeopardy, and that she should

2  be careful; Dr. Motykie then laughed and went to his hotel room alone.

3      32.     Dr. Motiff commented to Plaintiff regarding the physical and sexual

4  attributes of the person Plaintiff was then dating. Plaintiff had never discussed or mentioned

5  to anyone in her office who she was dating, which added to Plaintiff's suspicion that

6  Defendants somehow had access to her private cell phone-based communications. Dr.

7  Motykie disclosed Plaintiff's private facts to other employees at the Practice. Many persons

8  in her office then continued to make derogatory comments about the physical and sexual

9  attributes of the person she was dating. Dr. Motykie also asked Plaintiff about topics related

10 to the person she was dating that she had only discussed via cell phone outside of the

11 workplace with the person she was dating. This, too, added to her suspicion that her

12 employers were spying on her and monitoring her private communications. Additionally, the

13 inappropriate comments of Dr. Motykie and others in her office concerning the person she

14 was dating made her very uncomfortable, stressed, embarrassed, worried, and more.

15     33.     Dr. Motykie frequently suggested in person and via text message to Ms.

16 Tindell that they should date each other; Ms. Tindell refused each suggestion. Consequently,

17 Defendants terminated Plaintiff.

18     34.     Kevin Motykie frequently sexually harassed Plaintiff every time he visited the

19 Practice. Kevin Motykie visited the Practice approximately twice per month during these

20 months. During his frequent visits, Kevin Motykie spent most of his time in Plaintiff's office.

21 On several occasions, Kevin Motykie inquired as to Plaintiff's specific sexual desires and

22 shared his specific sexual desires. Kevin Motykie also commented that Plaintiff "must be

23 lonely" and "must be ready to get fucked." Kevin Motykie also physically accosted Plaintiff

24 by poking her in the waist, grabbing her buttocks, and tickling Plaintiff on the floor in the

25 kitchen/break room. All of Kevin Motykie's comments and physical come-ons were

26 unwanted and against her wishes, which Plaintiff told Kevin.

27

28

COMPLAINT

35.     In January 2011, Plaintiff received a raise in pay. After notifying Ms. Tindell of the raise, Kevin Motykie sexually accosted Plaintiff by touching and grabbing her despite her telling him to stop.

36.     Kevin Motykie graphically described to Plaintiff his sexual encounters with another woman working for the Practice. The other woman, who reported directly to Plaintiff, was also not required to follow company policies or rules, which made it difficult for Plaintiff to manage her. Both Dr. Motykie and Kevin Motykie confirmed to Plaintiff that said female co-worker used cocaine. Upon information and belief, said female co-worker's drug use caused her to perform erratically at work. For example, it caused her to be late, cancel patient appointments, and even burn a patient with a chemical peel. After the chemical peel incident, Kevin Motykie told Plaintiff to "be nice" to said co-worker, and "smooth things over" with the burned patient. Dr. Motykie told Plaintiff to leave the other woman alone. These events demonstrated to Plaintiff that having sex with Dr. Motykie and/or Kevin Motykie was the surest way to job security at the Practice. Because Plaintiff refused to have sex with either Dr. Motykie or Kevin Motykie, Plaintiff was ultimately terminated.

37.     As a result of Plaintiff's unwillingness to have sex with either Dr. Motykie or Kevin Motykie, Defendants retaliated against Plaintiff by making her job more difficult, favoring other employees, withholding commissions, and more.

### *Invasion of Privacy*

38.     At all times relevant, Plaintiff paid for and used a personal mobile phone with service provided by Sprint. None of the defendants paid for or provided Plaintiff's phone or service. Plaintiff's mobile phone was not a work phone, and the service was not for work.

39.     At all times relevant, Plaintiff maintained a personal web-based email account with Hotmail. Plaintiff's email account was not a work account. Plaintiff secured this account with a personal password.

40.     Upon information and belief, throughout Plaintiff's employment at the Practice, Dr. Motykie and Kevin Motykie improperly and illegally obtained and accessed

COMPLAINT

7

1  Ms. Tindell's private and personal electronic communications, including her personal emails,

2  text messages, picture messages, and phone call records. Upon information and belief,

3  Defendants did so by intercepting the password to Plaintiff's personal email account, and by

4  improperly gaining user access to Plaintiff's personal wireless phone account.

5      41.    In or about September 2010, Kevin Motykie added himself as an authorized

6  user to Plaintiff's personal wireless phone account without her consent or knowledge.

7  Plaintiff's carrier, Sprint, effectively confirmed this fact to Plaintiff in November 2011. Upon

8  information and belief and as will be described in greater detail below, Kevin Motykie

9  changed Plaintiff's account login credentials, which allowed him to monitor Plaintiff's phone

10  calls, text messages, picture messages, emails, and more.

11      42.    On or about June 17, 2011, Plaintiff entered her office at the Practice, and

12  found her computer on with her personal email account loaded with specific photos and

13  emails pulled up. When Plaintiff ceased use of her computer the prior day, she logged off and

14  shut down the computer. Subsequently, on or about the end of July 2011, Plaintiff attempted

15  to reset her Hotmail password, as she had many times throughout the ten years she

16  maintained that account. But upon doing so, the new password was not sent to her Hotmail

17  account, but rather to heather01@sprintpcs.com. Ms. Tindell does not maintain an email

18  account with that address. Plaintiff then contacted Sprint to learn whether that email address

19  was registered to her; it was not. From that point near the end of July through November 11,

20  2011—10 days after her termination—Plaintiff was not able to modify her login Hotmail

21  login credentials or account settings. On or about November 11, 2011, Plaintiff attempted to

22  modify her Hotmail login credentials successfully.

23      43.    Throughout 2011, Plaintiff communicated privately by cell phone (voice and

24  text) with specific third parties regarding some of her concerns at the Practice. Promptly

25  following these communications, Dr. Motykie would address these very issues with Ms.

26  Tindell. Topics included Plaintiff's marriage and pending divorce, other personal

27  relationships, none of which Plaintiff ever discussed in the office with anyone.

28

COMPLAINT

44.    From May 2011 to September 2011, Dr. Motykie ordered Plaintiff to cease communicating with Dr. Fisher, another cosmetic surgeon with whom Plaintiff had been friends for more than ten years. Dr. Fisher was one of the specific third parties with whom Plaintiff communicated by cell phone. Dr. Motykie instructed Ms. Tindell that she was either on "Team Motykie" or not. Dr. Motykie further intimated that continued communications of any kind with these persons could lead to Plaintiff's dismissal.

45.    Throughout Ms. Tindell's employment by Defendants, both Dr. Motykie and Kevin Motykie frequently questioned Ms. Tindell regarding her contacts with various third parties. Upon information and belief, Dr. Motykie and Kevin Motykie did so because they were monitoring her communications with these third parties via her cell phone, to which Kevin had improperly granted himself access.

46.    Upon information and belief, Dr. Motykie and Kevin Motykie without consent or knowledge obtained access to Plaintiff's personal email account. Upon doing so, Dr. Motykie and Kevin Motykie continually and frequently accessed her account, read her personal emails, and viewed personal files, including photos throughout her employment. The photos Defendants searched for and viewed included photos of Ms. Tindell modeling lingerie. At no point did Plaintiff open these modeling photos on a work computer. Defendants had no business purpose for accessing Plaintiff's personal emails.

47.    Plaintiff had a reasonable expectation of privacy in her personal emails whether sent and received from a work computer, a personal cell phone, a personal computer or any other device. Her personal Hotmail account was password protected; she did not share her password with Defendants; and she did not save her password on any work computer. The Practice also did not have a computer use policy of any kind, let alone one that advised Plaintiff that her personal emails would be subject to monitoring or inspection. Therefore, Plaintiff had no warning—written, oral, or implied—that Defendants may access and/or monitor Plaintiff's personal emails and/or other communications.

48.    Furthermore, upon information and belief, Defendants thoroughly searched

COMPLAINT

1  through old and archived email messages and files stored within Plaintiff's personal emails.

2  Therefore, even if the Practice had warned Plaintiff that it would monitor her personal use of

3  company computers (it had not, though), Defendants still lacked authority to search Ms.

4  Tindell's personal email account for old and archived messages and files, especially those

5  that were never transmitted over or stored on the Practice's network or computers.

6     49.    Defendants used the information improperly obtained from Plaintiff's

7  personal email account to embarrass, intimidate, and make sexual advances toward Plaintiff.

8  As a result, Plaintiff suffered severe anxiety, embarrassment, depression, discomfort, stress,

9  worry, nausea, and fright.

10  ***Wrongful Termination***

11     50.    Plaintiff was terminated on November 1, 2011. While the termination was

12  initially categorized as a "layoff," upon information and belief, she was quickly replaced by

13  two new employees, Kathryn Holtz and Jesscia, for the exact same role.

14     51.    Plaintiff contends she was fired for: refusing to date or have sex with Dr.

15  Motykie and/or Kevin Motykie and for protesting illegal and unethical actions made by or

16  under the direction of Dr. Motykie and Kevin Motykie.

17  ***After-Effects***

18     52.    As a result of Defendants' conduct, Plaintiff suffered fright, embarrassment,

19  depression, discomfort, stress, worry, anxiety, nausea, loss of sleep, and panic attacks.

20     53.    Plaintiff sought and received psychiatric care as a result of Defendants'

21  conduct for the conditions described above. As a part of Plaintiff's medical care, she was

22  prescribed medication to control her panic attacks.

23     54.    As a result of her termination, Plaintiff lost health insurance, which

24  necessitated her to pay out of pocket for her psychiatric care and prescription.

25  **FIRST CAUSE OF ACTION**

26  **Violation of the Stored Communications Act, 18 U.S.C. § 2701**

27  **Against Defendants Dr. Motykie and Kevin Motykie**

28

COMPLAINT

10

55. Plaintiff incorporates by reference the foregoing allegations.

56. Under 18 U.S.C. § 2701(a) of the Stored Communications Act, anyone who "intentionally access without authorization the facilities through which an electronic communications service is provided; or intentionally exceeds an authorization to access that facility; and thereby obtains, alters, or prevents authorized access to a wire or electronic communication while it is in electronic storage in such system shall be punished as provided in subsection (b) of this section."

57. As alleged herein, Defendants Dr. Motykie and Kevin Motykie intentionally accessed Plaintiff's web-based, personal emails without authorization and thereby obtained access to emails while in electronic storage in Hotmail's system. Defendants did so willfully.

58. Plaintiff's personal email service, Hotmail, is both an electronic computing service and a remote computing service, as defined by the ECPA, because it facilitates electronic communications and it provides remote storage services.

59. The already-delivered emails that Defendants accessed were in electronic storage for purposes of backup protection.

60. The undelivered, pending emails that Defendants accessed were in temporary, intermediate electronic storage incidental to the electronic transmission thereof.

61. Also as alleged above, Defendant Gary Motykie violated the Stored Communications Act when he intentionally accessed without authorization the content of Plaintiff's text messages, picture messages, and other messages stored on Plaintiff's cell phone provider's servers.

62. Plaintiff's cell phone provider, Sprint, is both an electronic communications service and a remote computing service, as defined by the ECPA, because it facilitates electronic communications and it provides remote storage services.

63. The already-delivered text, picture, and other messages that Kevin Motykie accessed were in electronic storage for purposes of backup protection.

64. The undelivered, pending text, picture, and other messages that Kevin

COMPLAINT

1 | Motykie accessed were in temporary, intermediate electronic storage incidental to the
2 | electronic transmission thereof.

3 |     65.    As a result of Defendants' unauthorized access to Plaintiff's personal emails,
4 | text messages, picture messages, and other messages, Plaintiff has suffered damages in an
5 | amount to be determined at trial.

6 |     66.    Plaintiff seeks remedy as provided for by 18 U.S.C. § 2707(b) and (c),
7 | including such preliminary and other equitable or declaratory relief as may be appropriate,
8 | damages consistent with subsection (c) of that section to be proven at trial, punitive damages
9 | to be proven at trial, and attorneys' fees and other litigation costs reasonably incurred.

10 | **SECOND CAUSE OF ACTION**

11 | **Invasion of Privacy**

12 | **Against Defendants Dr. Motykie and Kevin Motykie**

13 |     67.    Plaintiff incorporates by reference the foregoing allegations.

14 |     68.    Article I, Section 1 of the California Constitution states that: "All people are
15 | by nature free and independent and have inalienable rights. Among these are enjoying and
16 | defending life and liberty, acquiring, possessing, and protecting property, and pursuing and
17 | obtaining safety, happiness, and privacy."

18 |     69.    Plaintiff had a legally protectable interest in her personal emails and files
19 | stored in her personal email account.

20 |     70.    Plaintiff had a legally protectable interest in her personal cell phone
21 | communications.

22 |     71.    As described above, Plaintiff had a reasonable expectation of privacy in her
23 | personal emails and files stored in her email account.

24 |     72.    As described above, Plaintiff had a reasonable expectation of privacy in her
25 | personal cell phone communications.

26 |     73.    By accessing Plaintiff's password-protected, personal web-based email
27 | account, Defendants committed a serious invasion of Plaintiff's privacy.

28 |

COMPLAINT

74.     By accessing Plaintiff's personal cell phone account, Defendants committed a serious invasion of Plaintiff's privacy.

75.     Plaintiff was harmed by Defendants' invasion of her privacy. Plaintiff seeks damages in an amount to be proven at trial.

**THIRD CAUSE OF ACTION**

**Public Disclosure of Private Facts**

**Against Dr. Motykie and Kevin Motykie**

76.     Plaintiff incorporates by reference the foregoing allegations.

77.     By their conduct, Defendants have knowingly and intentionally caused the public disclosure of Plaintiff's emails and cell phone communications to other employees of the Practice. These private emails were not newsworthy, were not generally available to the public, and are facts that a reasonable person would not wish disclosed.

78.     Plaintiff has suffered harm as a result of Defendants' public disclosure of her private emails in an amount to be determined at trial. Plaintiff is entitled to actual and punitive damages and injunctive relief.

**FOURTH CAUSE OF ACTION**

**Intentional Infliction of Emotional Distress**

**Against Defendants Dr. Motykie and Kevin Motykie**

79.     Plaintiff incorporates by reference the foregoing allegations.

80.     Defendants exhibited extreme and outrageous conduct toward Plaintiff with the intention of causing, or with reckless disregard for the probability of causing, emotional distress. Defendants did so through multiple acts and communications, as described above. Defendants' conduct, as described above, was so extreme as to exceed all bounds of that usually tolerated in a civilized community.

81.     Plaintiff suffered severe or extreme emotional distress as a result of Defendants' outrageous conduct. As described above, her emotional distress included

COMPLAINT

1    paranoia, fear, fright, embarrassment, mental anguish, nausea, loss of sleep, panic attacks,

2    and more.

3        82.    Plaintiff had to seek medical care as a result of Defendants' conduct. Plaintiff

4    was prescribed anti-panic attack medication as a result of Defendants' conduct.

5        83.    Defendants' conduct was not privileged.

6        84.    Plaintiff seeks damages for actual damages, the emotional distress, severe

7    anxiety, depression, and other conditions described above that she suffered.

8                        **FIFTH CAUSE OF ACTION**

9        **Sexual Harassment in Violation of Cal. Gov't. Code § 12940**

10                       **Against All Defendants**

11       85.    Plaintiff incorporates by reference the foregoing allegations.

12       86.    As described above, Dr. Motykie and Kevin Motykie, Plaintiff's employers,

13   sexually harassed Plaintiff repeatedly. Dr. Motykie and Kevin Motykie both frequently

14   grabbed and touched Ms. Tindell without her consent and against her known wishes, as well

15   as frequently made sexual comments and suggestions to and about Ms. Tindell.

16       87.    Because Kevin Motykie grabbed and touched Ms. Tindell promptly after

17   notifying her of a pay raise, his conduct gives rise to a charge of quid pro quo sexual

18   harassment. The fact that Defendants fired Plaintiff after she repeatedly refused their sexual

19   advances also supports a quid pro quo charge.

20       88.    Because of the nature and frequency of Defendants' unwanted and unwelcome

21   sexual advances, their conduct also gives rise to a charge of hostile work environment sexual

22   harassment. Plaintiff perceived her work environment to be hostile and abusive. Prior to her

23   dismissal, Plaintiff found her work environment was altered because of Defendants' conduct.

24   Specifically, her employers' advances made her uncomfortable, and her employers made her

25   work more difficult to perform because she refused their advances. Moreover, the harassment

26   she suffered occurred frequently and continually throughout her employment.

27       89.    Plaintiff's discharge has caused her harm.

28

COMPLAINT

1     90.    Plaintiff seeks damages for the harassment she suffered by Defendants.

2     91.    Under Cal. Gov't. Code § 12965(b), Plaintiff also seeks attorneys' fees and

3  costs.

4                     **SIXTH CAUSE OF ACTION**

5         **Retaliation in Violation of Cal. Gov. Code § 12940(h)**

6            **Against Defendants All Defendants**

7     92.    Plaintiff incorporates by reference the foregoing allegations.

8     93.    As alleged herein, Defendants terminated Plaintiff in retaliation for opposing

9  Defendants' acts of sexual harassment and other behaviors.

10     94.    Plaintiff's discharge has caused her harm.

11     95.    Plaintiff seeks damages for the retaliation, including damages for emotional

12  distress and lost wages.

13     96.    Under Cal. Gov't. Code § 12965(b), Plaintiff also seeks attorneys' fees and

14  costs.

15                **SEVENTH CAUSE OF ACTION**

16       **Wrongful Termination in Violation of Public Policy**

17                **Against All Defendants**

18     97.    Plaintiff incorporates by reference the foregoing allegations.

19     98.    As described above, Defendants employed Plaintiff from August 2010 to

20  November 1, 2011. Throughout her employment, Plaintiff expressed concerns to Defendants

21  regarding Defendants' illegal conduct, including sexual harassment, and more.

22     99.    Defendants' business practices referenced herein are illegal.

23     100.    Plaintiff brought Defendants' involvement and participation in illegal

24  practices to the attention of Defendants.

25     101.    As a result of Plaintiff's conduct as described above, and in violation of public

26  policy as described above, Defendants terminated Plaintiff's employment on November 1,

27  2011. Defendants terminated Plaintiff for voicing her concerns and her reluctance and

28

COMPLAINT

1   unwillingness to participate in, facilitate, or aid and abet the illegal conduct. Public policy

2   favors protection of employees from dismissal for voicing concerns, within an enterprise,

3   concerning the legality or morality of the enterprise's conduct.

4       102.   As a result of Defendants' termination of her employment, Plaintiff has

5   suffered harm, including lost earnings and other employment benefits, humiliation,

6   embarrassment, fright, mental anguish, panic attacks, and loss of sleep for an amount to be

7   determined at trial.

8       103.   In doing the acts set forth above, Defendants knew or should have known that

9   the conduct that they would have required of Plaintiff was illegal, and required Plaintiff to

10  choose between violating the law and losing her job.

11      104.   Notwithstanding this knowledge, Defendants subjected Plaintiff to cruel and

12  unjust hardship in conscious disregard of Plaintiff's right by terminating Plaintiff's

13  employment.

14      105.   One or more managing agents of Defendants conducted the oppressive

15  conduct.

16      106.   As a result, Plaintiff suffered damages, lost wages, and benefits in amount to

17  be proven at trial.

18      107.   Defendants' conduct warrants the assessment of punitive damages.

19                        **PRAYER FOR RELIEF**

20  WHEREFORE, Plaintiff Heather Tindell prays for the following relief:

21  A.   Declare that Defendants' actions, as set out above, violate the Stored

22          Communications Act, the California Constitution, common law, and Cal.

23          Gov't. Code § 12940;

24  B.   Award Plaintiff any applicable statutory damages;

25  C.   Award all economic, monetary, actual, consequential, and compensatory

26          damages caused by Defendants' conduct, and if their conduct is proved

27          willful, award Plaintiff exemplary and/or punitive damages;

28

COMPLAINT

D.    Award restitution against Defendants for all money to which Plaintiff is entitled in equity;

E.    Award Plaintiff her reasonable litigation expenses and attorneys' fees;

F.    Award Plaintiff pre- and post-judgment interest, to the extent allowable;

G.    Enter injunctive and/or declaratory relief as is necessary to protect the interests of Plaintiff; and

H.    Award such other and further relief as equity and justice may require.

## JURY TRIAL

Plaintiff demands a trial by jury for all issues so triable.

Respectfully submitted,

Dated: August 17, 2012          ASCHENBRENER LAW, P.C.


By: _____
        MICHAEL ASCHENBRENER
        One of the Attorneys for Plaintiff

COMPLAINT

17

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Stephen V. Wilson and the assigned discovery Magistrate Judge is Michael Wilner.

The case number on all documents filed with the Court should read as follows:

## CV12- 7116 SVW (MRWx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

========================================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| | | |
|---|---|---|
| [ ]  **Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | [ ]  **Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | [ ]  **Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Central District of California

| | |
|---|---|
| HEATHER TINDELL, an individual | )<br>)<br>) |
| *Plaintiff(s)* | )<br>) |
| v. | ) |
| GARY MOTYKIE, M.D., INC., a California Medical<br>Corporation; GARY MOTYKIE, an individual; and,<br>A\so d̶b̶a̶ a̶s̶ m̶o̶t̶y̶k̶i̶e̶ ̶m̶e̶d̶ ̶S̶p̶a̶ KEVIN MOTYKIE, an individual, | )<br>)<br>)<br>)<br>) |
| *Defendant(s)* | ) |

Civil Action No. **CV12-7116** -SVW (MRWx)

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

ASCHENBRENER LAW, P.C.
Michael Aschenbrener
795 Folsom St, First Floor
San Francisco, CA 94107
mja@aschenbrenerlaw.com

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

CLERK OF COURT

Date: **AUG 17 2012**  _____

*Ann M. Martinez*

*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Central District of California

| | |
|---|---|
| HEATHER TINDELL, an individual | ) |
| | ) |
| | ) |
| _Plaintiff(s)_ | ) |
| v. | ) |
| GARY MOTYKIE, M.D., INC., a California Medical | ) |
| Corporation; GARY MOTYKIE, an individual; and, | ) |
| Also d/b/a KEVIN MOTYKIE, an individual, | ) |
| As Motykie med Spa | ) |
| _Defendant(s)_ | ) |

Civil Action No.

**CV12-7116**-SVW (MRWx)

## SUMMONS IN A CIVIL ACTION

To: _(Defendant's name and address)_

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

ASCHENBRENER LAW, P.C.
Michael Aschenbrener
795 Folsom St, First Floor
San Francisco, CA 94107
mja@aschenbrenerlaw.com

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

CLERK OF COURT

Date:  AUG 1 7 2012

ANN M. MARTINEZ

_Signature of Clerk or Deputy Clerk_

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Central District of California

| | |
|---|---|
| HEATHER TINDELL, an individual ) | |
| ) | |
| ) | |
| ) | **CV12-7116**- SVN (MRWx) |
| _Plaintiff(s)_ ) | |
| v. ) | Civil Action No. |
| ) | |
| GARY MOTYKIE, M.D., INC., a California Medical ) | |
| Corporation; GARY MOTYKIE, an individual; and, ) | |
| Also d/ba As Motykie Med Spa KEVIN MOTYKIE, an individual, ) | |
| ) | |
| _Defendant(s)_ ) | |

## SUMMONS IN A CIVIL ACTION

To: _(Defendant's name and address)_

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

        ASCHENBRENER LAW, P.C.
        Michael Aschenbrener
        795 Folsom St, First Floor
        San Francisco, CA 94107
        mja@aschenbrenerlaw.com

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

                                          _CLERK OF COURT_

Date:    AUG 1 7 2012                         **ANN M. MARTINEZ**

                                        _Signature of Clerk or Deputy Clerk_

1197

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐) | DEFENDANTS |
|---|---|
| Tinden, Heather | Gary Motykie, M.D., Inc.<br>Motykie, Gary<br>Motykie, Kevin |

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) | Attorneys (If Known) |
|---|---|
| Aschenbrener Law, P.C.<br>795 Folsom Street, First Floor, San Francisco, CA 94107<br>415-813-6245 | Caskey & Holzman<br>6255 W Sunset Blvd, Suite 2212, Los Angeles, CA 90028-7423<br>323-391-3984 |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff  ☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant  ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify):  ☐ 6 Multi-District Litigation  ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes  ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes  ☒ No  ☒ MONEY DEMANDED IN COMPLAINT: $ TBD

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
18 U.S.C. § 2701. Unauthorized access to electronic communications.

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | **BANKRUPTCY** | ☐ 540 Mandamus/Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | **FORFEITURE / PENALTY** | **PROPERTY RIGHTS** |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☒ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | | **SOCIAL SECURITY** |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 445 American with Disabilities - Employment | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | **REAL PROPERTY** | | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | **REAL PROPERTY** | ☐ 210 Land Condemnation | **IMMIGRATION** | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 220 Foreclosure | ☐ 462 Naturalization Application | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 230 Rent Lease & Ejectment | ☐ 463 Habeas Corpus-Alien Detainee | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | ☐ 240 Torts to Land | ☐ 465 Other Immigration Actions | | **FEDERAL TAX SUITS** |
| ☐ 950 Constitutionality of State Statutes | ☐ 240 Torts to Land | ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| | ☐ 245 Tort Product Liability | ☐ 290 All Other Real Property | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

**CV12-7116**

**FOR OFFICE USE ONLY:** Case Number: _____

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**



**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑No ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑No ☐ Yes
If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**

(Check all boxes that apply) ☐ A. Arise from the same or closely related transactions, happenings, or events; or

           ☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

           ☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or

           ☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☐ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County | |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☐ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County (Gary Motykie, M.D., Inc.) Los Angeles County (Motykie, Gary) | Cook County, Illinois (Motykie, Kevin) |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
Note: **In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County | |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved. _____

X. SIGNATURE OF ATTORNEY (OR PRO PER): _____ Date August 17, 2012

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |